

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Tom DeBerry
Member, State Board of Control
Austin, Texas

Dear Senator DeBerry:

Opinion No. 0-2540
Re: Purchase and sale of Volume
I, Annual Opinion Report of
the Attorney General of Tex-
as.

  We have received your letter of July 12, 1940,
which reads as follows:

  "I have before me Requisition 371 from
the Texas Highway Planning Survey requesting
approval by the Board of Control of the pur-
chase of 'Volume 1 Attorney General's monthly
Report.' Would this purchase and sale be al-
lowed by law?"

  You undoubtedly have reference to Volume I of the
Annual Opinion Report of the Attorney General. The purpose
of this Report is to provide in convenient and permanent
form a record of all the opinions rendered by the Attorney
General's Department to the various public officials during
the calendar year 1939. It is a bound publication of 800
pages, consisting of 466 pages of summaries of such opinions
and 334 pages of a statute and subject matter index.

  Article IV, Section 22, Constitution of Texas makes
it the official duty of the Attorney General to "give legal
advice to the Governor and other executive officers, when re-
quested by them, and perform such other duties as may be re-
quired by law." Article 4399, Revised Civil Statutes, makes

it his further duty to give, upon request, written legal advice upon any question "touching the public interest or concerning their official duties" to the head of any department of the State Government, the heads and boards of the penal and eleemosynary institutions, and all other State boards, regents, trustees of the State educational institutions, committees of either branch of the Legislature, and county auditors, authorized by law. Said statute also makes it the duty of the Attorney General to advise the county and district attorneys in certain instances, and to advise proper legal authorities in regard to the issuance of all bonds that the law requires shall be approved by him. However, there is no authority requiring the Attorney General to publish a volume of the summaries of opinions rendered and distribute them free of cost to applicants requesting the same. On the other hand, there appears in the general rider to Senate Bill 427, Acts 46th Legislature, Regular Session, the following provision:

> "Any contingent funds herein appropriated, and any funds appropriated for printing, may be used under the direction of any department for which any such appropriation is made for the publication and distribution of any notices, pamphlets, booklets, rules, regulations, and other matters of public interest; provided that a charge may be made and collected for such publications and notices which will reasonably reimburse such funds for such actual expense." (Underscoring ours)

The current appropriation to the Attorney General's Department carries items both for contingent expense and for printing. It is out of one or both of these items of appropriations that the cost of this publication will be paid.

In view of the foregoing, you are respectfully advised that the Attorney General is authorized to sell to any applicant a copy of Volume I of the Annual Opinion Report and deposit the proceeds of the sale to the credit of the fund or funds which bore the expense of the publication.

Since we have determined that the publication
and sale is authorized, we now turn to the consideration
of your question pertaining to the authority of the Texas
Planning Survey to make such a purchase.

An opinion written to one public official may
be applicable to and affect other public officials in the
performance of their duties; yet, the latter officials
may have no knowledge of the existence of the opinion.
This publication makes it possible for all public officials
as well as private citizens to acquaint themselves fully
with the rulings of this department on the many difficult
and perplexing questions officially submitted to and answered
by this department. We believe that a knowledge of these
rulings will not only be of great benefit to all public of-
ficials but also to the public generally. In the foreword
of this report, it is stated;

"Should anyone having in his possession a
copy of this publication desire a copy of any
opinion summarized herein, we shall be happy
to furnish such copy at his request."

Of course, such copies will be furnished to the
persons requesting them without cost.

The Texas Highway Planning Survey is not a crea-
ture of any legislative act; it is merely a departmental
designation for convenience of a group of employees to as-
sist the State Highway Department in the coordination of the
activities of the United States Highway authorities and of
the State Highway Commission in the construction, improve-
ment, and maintenance of the highways of Texas.

There is no specific appropriation for the employ-
ment and compensation of such employees, but it is suggested,
and we think correctly so, that such authority is found in
the special rider attached to the appropriation for the High-
way Department, providing:

". . . all funds or balances of funds on
hand September 1, 1939, and all funds coming
into the State Highway Fund, and derived from
registration fees or from other sources, after
deducting the total of the specific appropria-
tions herein made, are hereby appropriated to

the State Highway Department <u>for the establish-
ment of a system of State highways and the con-
struction and maintenance thereof</u>, as contemplated
and set forth in said Chapter 1, Title 116, and
Chapter 186, General Laws of the Regular Session
of the 39th Legislature, and amendments thereto."
(Underscoring ours)

It cannot be doubted that this appropriation for
the general purpose of the establishment of a system of
State highways and the construction and maintenance there-
of is broad enough to include the activities of the Texas
Highway Planning Survey. The immediate question is there-
fore narrowed to this: Is the purchase by the Highway Com-
mission for the use of its planning survey of the volume
of opinions for which the requisition is drawn within the
implied authority contained in the general appropriation
of the rider above quoted?

We are of the opinion that such implied author-
ity is present. The underscored part of the above quoted
rider is broad in terminology and would authorize any ex-
penditure which bears a direct relationship to the estab-
lishment and maintenance of a system of state highways.

Various opinions have been rendered to county of-
ficials relative to the establishment, construction, and
maintenance of county roads. Certainly the information
found in these opinions relating to these subjects are im-
portant to the Highway Commission in the performance of
their duties in the establishment of state highways. The
publication in question is indexed as to such matter, and
although the Planning Survey may secure a copy of any opin-
ion rendered by this department, it may have no means of
knowing, without this volume, what opinions have been writ-
ten relative to highways, roads, and streets, and other
subjects which may either directly or indirectly affect
said department. Also, this department has rendered opin-
ions concerning highways and roads to state departments
other than the Highway Department. While this latter class
of opinions may not be such a direct benefit, certainly it
would be helpful to the Planning Survey in the performance
of its duties.

There is no specific provision in the appropriation to the Highway Department for the purchase of such publication; however, there is an appropriation for contingent expenses.

In Words and Phrases (First Series), Vol. 2, p. 1502, there appears the following:

"The adjective 'contingent', as used in appropriation bills to qualify the word 'expenses', has a technical and well-understood meaning. It is usual for Congress to enumerate the principal classes of expenditure which they authorize, such as clerk hire, fuel, light, postage, telegrams, etc., and then to make a small appropriation for the minor disbursements incidental to any great business, which cannot well be foreseen, and which it would be useless to specify more accurately. For such disbursements, a round sum is appropriated under the head of 'contingent expenses.' Dunwoody v. United States (U.S.) 22 Ct. Cl. 269, 280."

The moneys of a contingent fund are to be used for purposes for which the Legislature did not foresee or anticipate or for which specific itemized provision has not otherwise been made. See Opinions O-906-A, and O-1294.

In view of the foregoing you are respectfully advised that the Highway Department may purchase for the use of the Planning Survey Volume I of the Annual Opinion Report of the Attorney General and pay for the same out of its contingent expense appropriation.

You are further advised that contingent funds appropriated to any other state department or board may be used to purchase such publication if the head of such department or board in the exercise of sound discretion determines that its use would aid the department or board in the performance of its official duties.

Approved Jul 25, 1940
/s/ Gerald C. Mann
Attorney General of
Texas
Approved Opinion Committee By R.W.F.
Chairman
GWS:ew:ddt

Very truly yours

ATTORNEY GENERAL OF TEXAS

By      /s/
                Bruce W. Bryant
                Assistant

By      /s/
                George W. Sparks